1

2

3

4

5                    **IN THE UNITED STATES DISTRICT COURT**

6                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8    JESUS M. SOSA-SMITH,                    CASE NO.  1:04-cv-05873 TAG

9                 Plaintiff,                 MEMORANDUM DECISION AND ORDER
                                             ON PLAINTIFF'S APPEAL FROM
10   _____        ADMINISTRATIVE DECISION
     _____vs.
11                                           ORDER DIRECTING THE CLERK TO
                                             ENTER JUDGMENT IN FAVOR OF
12   JO ANNE B. BARNHART,                     DEFENDANT AND AGAINST PLAINTIFF
     Commissioner of Social Security,
13
                  Defendant.
14   _____/

15         Plaintiff Jesus M. Sosa-Smith ("claimant" or "plaintiff") seeks judicial review of an

16   administrative decision denying her claim for disability benefits under the Social Security Act

17   ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the

18   Commissioner of Social Security ("Commissioner").  Claimant filed his complaint on June 21, 2004,

19   and his opening brief on April 5, 2005.  The Commissioner filed her opposition to the appeal on May

20   6, 2005.  Claimant did not file a reply brief.

21         Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed

22   before a United States Magistrate Judge, and, by an order dated March 2, 2005, this action was

23   assigned to the United States Magistrate Judge for all further proceedings.

24                              **JURISDICTION**

25   _____In April of 1991, claimant applied for Supplemental Security Income ("SSI") benefits and

26   Disability Insurance Benefits ("DIB") alleging disability since April 22, 1989.  (Administrative

27   Record ("AR") 161-164).  He was found to be disabled as of September 23, 1992; however, his

28   disability was found to have ceased on May 1, 2001 and his entitlement to benefits ceased as of July

                                            1

31, 2001.  (AR 322-330, 334-337, 343-352).  Claimant appealed this determination alleging continued disability due to neck and back injuries.  (AR 356-363).  After timely requesting a hearing, claimant appeared before Administrative Law Judge ("ALJ") Joseph Gontram on June 14, 2002, at which time he heard testimony from claimant who appeared without an attorney.  (AR 46-98).  On August 12, 2002, the ALJ issued a decision finding that claimant's disability had ceased on May 1, 2001.  (AR 519-525).[1]  The Appeals Council denied a request for review on April 19, 2004.  (AR 18-21).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Claimant timely filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.  Claimant was born on March 6, 1952, making him 50 years old at the time of the ALJ's decision.  (AR 161, 525).  Claimant stated that he lives in a home with his mother, wife and 13 year old son.  (AR 65).  He indicated he is capable of driving and typically drives about one hour to one and one-half hours per day.  (AR 66).  He testified that two years prior to the hearing he drove "straight through" to Sinaloya, Mexico, a trip of about 32 hours.  (AR 67-68).  He stated he completed the 11th grade in high school and has not worked since 1990.  (AR 68-69).

At the administrative hearing held on June 14, 2002, claimant appeared without representation but indicated his wish to proceed with the hearing at that time as opposed to continuing it to a later date so that he could contact counsel.  (AR 54-56).  Claimant was specifically informed that it was his decision to make regarding whether to continue the hearing or not, and he explicitly stated "[l]et's have the hearing."  (AR 56).

Claimant testified that he last worked in 1990 as an assistant manager for an apartment complex.  (AR 69).  Prior to the assistant manger position, claimant indicated he worked for about

---

[1]  After ALJ Gontram issued his cessation of disability decision on August 12, 2002, claimant filed a new application for benefits on September 5, 2002 (AR 567) which was denied by a different ALJ on July 13, 2004 (AR 12-17).  That decision is not before this Court.

1    three years as an arc welder, welding pipes.  (AR 71).  Prior to working as an arc welder, claimant

2    worked eight years as a truck driver.  (AR 73).

3         As to his daily activities, claimant testified that he typically helps his mother with some

4    housework, runs a vacuum, helps clean the yard, washes his car once a week, does some grocery

5    shopping, and takes his mother to the doctor.  (AR 77-79).  He stated that he does not watch

6    television, but does listen to music on the radio and reads books.  (AR 80).  He indicated he

7    periodically types on his computer and goes to the movies at least once a month with his wife.  (AR

8    81-82).  He also stated that he sometimes does some very light cooking for his mother.  (AR 82).

9         Claimant testified that he does not think that he could work now.  (AR 88).  He stated that he

10   had been trying to find work for the last nine years but has been informed that he is a liability.  (AR

11   88-90).  He affirmed that, basically, he is willing to work but nobody will hire him due to his

12   medical conditions.  (AR 91).

13        He indicated he could lift no more than 20 pounds and would have difficulty sitting for

14   extended periods of time due to previous hernial surgeries.  (AR 93-95).  He stated that sitting does

15   not cause him trouble, but, the longer he sits, the more difficult it is for him to get up.  (AR 95).

16   Claimant testified that he walks about once a week, about two blocks at a time.  (AR 83).

17                    **TERMINATION OF BENEFITS EVALUATION PROCESS**

18        In order to determine whether a claimant's disability is continuing or has ceased, and

19   therefore whether DIB and/or SSI benefits must terminate, an eight-step process is followed.  Griego

20   v. Sullivan, 940 F.2d 942, 944 n. 1 (5th Cir. 1991)(eight-step process for analyzing whether disability

21   benefits should terminate); Aikens v. Shalala, 956 F. Supp 14, 16 & n.2 (D.D.C. 1997)(same).[2]  At

22   Step One, the issue is whether claimant is engaged in substantial gainful activity.  20 C.F.R.

23   §§ 404.1594(f)(1)(DIB).  If so, claimant's disability is deemed terminated.  Id.

24        At Step Two, the issue is whether claimant's impairment meets or equals the impairments set

25   out in the Listing of Impairments.  If so, benefits continue.  20 C.F.R. §§ 404.1594(f)(2)(DIB),

26

27        [2]  SSI continuing disability determinations delete the first step, i.e., whether claimant is engaged in substantial
     gainful activity.  See 20 C.F.R. § 416.994(b)(5).  The remaining seven steps are followed.  Hence, the subparagraph
     numbering of section 416.994(b)(5) corresponds to that of section 404.1594(f), but offset by the missing first step in SSI

28   analysis.

416.994(b)(5)(i)(SSI).  At Step Three, reached if a claimant's impairments do not meet the Listing of Impairments, the issue is whether there has been any medical improvement since the original determination of disability.  If there has been medical improvement, as shown by a decrease in medical severity, the Commissioner proceeds to Step Four.  Otherwise, and absent medical improvement, the Commissioner proceeds to Step Five.  20 C.F.R. §§ 404.1594(f)(3)(DIB), 416.994(b)(5)(ii)(SSI).

At Step Four, the Commissioner must determine whether a medical improvement is related to claimant's ability to do work, i.e., whether there has been an increase in claimant's residual functional capacity.  If so, then the Commissioner proceeds to Step Six.  Otherwise, and absent an ability to do work (as with an absence of medical improvement), the Commissioner proceeds to Step Five.  20 C.F.R. §§ 404.1594(f)(4)(DIB), 416.994(b)(5)(iii)(SSI).

As noted above, Step Five applies if there has been no medical improvement or if the improvement is unrelated to claimant's ability to do work.  At Step Five, the Commissioner determines whether any of the two groups of exceptions to the medical improvement standard of review applies.  20 C.F.R. §§ 404.1594(f)(5)(DIB), 416.994(b)(5)(iv)(SSI).  If no exceptions apply, claimant's disability continues; if the first group of exceptions apply, then the Commissioner proceeds to Step Six; and if the second group of exceptions apply, claimant's disability is terminated. Id.

As noted above, Step Six applies if claimant's medical improvement is related to his ability to do work (or if one of the Step Five group of exceptions applies).  At Step Six, the Commissioner determines whether claimant's impairments are sufficiently severe as to limit his physical or mental abilities to do basic work activities.  If they are not sufficiently severe, disability is terminated.  20 C.F.R. §§ 404.1594(f)(6)(DIB), 416.994(b)(5)(v)(SSI).  If claimant's impairments are sufficiently severe then, at Step Seven, the Commissioner assesses claimant's residual functional capacity to determine whether he can still perform past work.  20 C.F.R. §§ 404.1594(f)(7)(DIB), 416.994(b)(5)(vi)(SSI).  Once again, if he can perform past work, disability terminates.  Otherwise, the Commissioner proceeds to Step Eight.  Id.

///

1    Finally, at Step Eight, reached if claimant cannot perform past work, the Commissioner

2    considers whether, given claimant's age, education, past work experience and residual functional

3    capacity, claimant can do other work.  20 C.F.R. §§ 404.1594(f)(8)(DIB), 416.994(b)(5)(vii)(SSI).  If

4    so, disability terminates.  Otherwise, benefits continue.  Id.

5    **STANDARD OF REVIEW**

6    _____Congress has provided a limited scope of judicial review of a Commissioner's decision.  See,

7    42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

8    the determination is not based on legal error and is supported by substantial evidence.  See, Jones v.

9    Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health and Human Services, 812

10   F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

11   contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is

12   not disabled will be upheld if the findings of fact are supported by substantial evidence."  Delgado v.

13   Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more

14   than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

15   than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

16   Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence

17   "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

18   Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and

19   conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

20   Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as

21   a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan,

22   877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

23   It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson,

24   402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold

25   the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a

26   decision supported by substantial evidence will still be set aside if the proper legal standards were

27   not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and

28   Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support

the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

While he did not specifically enumerate each of eight steps for determining whether a cessation of disability benefits was required, the ALJ did make findings specific to each such step .

### Step One of Termination Analysis

With respect to Step One of the termination analysis, the ALJ found that claimant had not engaged in substantial gainful activity since the original disability onset date.  (AR 524).  It was noted that claimant briefly worked as a substitute security officer in May 2001 and worked in 1990 and 1991 as an assistant manager of an apartment house but that the income earned from these jobs fell below the threshold amount defining substantial gainful activity.  (AR 520).

### Step Two of Termination Analysis

Relevant to Step Two, the ALJ determined that claimant has the following impairments: status post-cervical and lumbar surgeries, mitral valve prolapse, angina, and a depressive disorder. (AR 520, 524).  The ALJ further found that these impairments did not meet or equal the severity of an impairment in the Listed Impairments, 20 C.F.R. § 404 Subpt. P App. 1.  (AR 520, 524).

### Step Three of Termination Analysis

In order to assess medical improvement, Step Three of the disability termination analysis, the ALJ noted that claimant's impairments as of September 23, 1992 (the time of the most recent medical decision in favor of disability) were lumbar strain, status post-bilateral hernia surgery, bursitis of the left hip, dysthymia, and probable somatoform disorder.  (AR 524.)  Measured against this prior determination point, the ALJ found that the medical evidence "establishes that there has been improvement in claimant's medical impairments."  (AR 521-22, 524.)  Among other things, the ALJ noted that claimant has progressed to the point where he can "walk and stand without difficulties, has slight limitation in the range of motion of his back, and does not use, or need, a cane to ambulate."  (AR 522.)  Moreover, while claimant previously had impairments of lumbar strain, left hip bursitis and was status post-bilateral inguinal hernia surgery, the ALJ found that claimant

was now status post-cervical and post-lumbar surgeries, did not appear to have residual radiculopathy in his arms or legs, nor any abdominal pain or residuals from hernia surgery.  (AR 522.)

### Step Four of Termination Analysis

Given claimant's medical improvement, the ALJ next considered whether the improvement was related to claimant's ability to do work, i.e., whether there had been an increase in claimant's residual functional capacity.  (AR 524.)  The ALJ found that claimant's medical improvement was indeed related to his ability to work.  (AR 523-24.)  Thus, the ALJ noted that claimant testified to "a range of daily activities that are consistent with a capacity for light exertion, and which demonstrate the ability to understand and carry out more than simple tasks."  (AR 523.)

### Step Five of Termination Analysis

The ALJ did not engage in Step Five of the termination analysis insofar as it applies only if there has been no medical improvement or if the improvement is unrelated to claimant's ability to do work.

### Step Six of Termination Analysis

With respect to Step Six of the termination analysis, the ALJ found that claimant suffered impairments that were "severe," namely, status post-cervical and lumbar surgeries, mitral valve prolapse, angina, and a depressive disorder.  (AR 524.)

### Step Seven of Termination Analysis

Relevant to Step Seven - claimant's residual functional capacity to perform past work - the ALJ noted that claimant's past relevant work "required medium or heavy exertion [and that] his limitations prevent him from returning to such employment."  (AR 523, 525.)

### Step Eight of Termination Analysis

Finally, the ALJ reached Step Eight of the disability termination analysis, specifically, whether, given claimant's age, education, past work experience and residual functional capacity, claimant can perform other work.  (AR 523.)  Applying the Medical-Vocational Guidelines ("the Grids"), see 20 CFR §§ 404.1569 and Subpt. P App. 2, the ALJ found that claimant was not

///

1  "disabled" given that his impairments did not affect his ability to perform a "significant range of

2  unskilled light and sedentary work."  (AR 524.)

3  <center>**ISSUES**</center>

4       The issues raised by claimant on appeal from the administrative decision terminating his

5  disability benefits are as follows:

6       1.  Whether the ALJ erred by failing to provide claimant with due process.

7       2.  Whether the ALJ erred in his termination of benefits analysis by improperly reviewing

8  evidence of medical improvement.

9       3.  Whether the ALJ erred by failing to fully and fairly review the medical evidence.

10      4.  Whether the ALJ erred by not calling a vocational expert to give testimony at the

11  administrative hearing.

12      5.  Whether the ALJ erred by failing to develop the mental health record.

13      This Court must uphold the Commissioner's determination that claimant is not disabled if the

14  Commissioner applied the proper legal standards and there is substantial evidence in the record as a

15  whole to support the decision.

16  <center>**<u>DISCUSSION</u>**</center>

17  **1.  Due Process**

18      Claimant asserts that the ALJ denied him due process by conducting a hearing without the

19  presence of claimant's attorney and by not helping him to update his medical records.  (Doc. 13 at p.

20  3).

21      When a claimant is unrepresented at a disability determination hearing, the ALJ must

22  "'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' . . .

23  He must be 'especially diligent in ensuring that favorable as well as unfavorable facts and

24  circumstances are elicited.'"  <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir 1978)(citations omitted).

25  Notwithstanding these obligations, due process is not violated simply by lack of representation at a

26  social security disability hearing.  <u>Figueroa v. Secretary of Health, Education and Welfare</u>, 585 F.2d

27  551, 554 (1st Cir. 1978)(contention that lack of legal representation at disability hearing violated due

28  process was frivolous where claimant was fully informed of his right to have retained counsel

<center>8</center>

present at the hearing but elected to proceed without counsel).  Rather, claimant must demonstrate prejudice or unfairness in the conduct of the hearing itself.  Hall v. Secretary of Health, Education and Welfare, 602 F.2d1372, 1378 (9th Cir. 1979).

Here, the ALJ here not only told claimant that he could have counsel present if he wished, but also offered to continue the hearing for 20 days so that claimant could obtain counsel.  This offer was rejected by claimant:

> ALJ:  . . . I want to be sure that you feel comfortable, that you otherwise are satisfied to proceed today without a representative.
>
> Clmt:  Okay.
>
> ALJ:  If you want to contact Mr. [Ishikawa], and I realize you haven't yet, and I want to admonish you for not doing to, but let's get over that – if you want to have Mr. [Ishikawa] or someone else to represent you in this proceeding, I would be willing to continue the proceeding, not have the hearing today, have it in about 20 days or so, and we would then go with – go again for a hearing but I will tell you this –
>
> Clmt:  Yes, sir.
>
> ALJ:  – if we did that, the next time that it is set, we will go whether you have a representative or whether you don't, I'm not going to be concerned about it.  But, if you want, I will continue it today in order to give you the opportunity to either contact Mr. [Ishikawa] or some other representative in order to get representation.
>
> Clmt:  I see.  No, that's okay.  I might as well just get it over with.
>
> ALJ:  All right.  But I just want to be sure – I want you to be comfortable in doing that, all right?  I just – I mean, I realize, you know, that clearly you should have contacted – made an effort to contact Mr. [Ishikawa] or someone but, you know, I mean, that's water over the dam.  My concern now is that you are protected and you feel protected, that you feel comfortable, that you feel no need to obtain a representative in order to proceed with the hearing.  That is my concern and I'm telling you, if you did, if you were uncomfortable or if you wanted to try now, even if you haven't tried before, if you wanted to try now, I would continue it for 20 days.  Otherwise, if you are comfortable, if you don't want to do that, I'm satisfied that we can go ahead with the hearing and do so similar to what we would do, even with your attorney but if – or your representative.  But if you have a representative, of course, then the representative might want to ask you questions, might want to do things on your behalf that maybe you don't know right now.  All right.  So I'm just saying all of these things, if you want to have a continuance, that is fine, I won't hold it against you in any way.  I will tell you though that the next time, we will absolutely go whether you have one or you don't or we can go ahead this morning and have the hearing.
>
> Clmt:  Let's have the hearing. (AR 54-56.)

In addition, and as regards claimant's medical records, the transcript of claimant's hearing shows that the ALJ spent considerable time ensuring that the administrative file contained a

complete set of such records.  (AR 63.)  For example, when claimant stated he had been hospitalized due to a heart condition (AR 57-58), the ALJ located those records in the file to the satisfaction of claimant (AR 59-60).  The ALJ also accepted other evidence from claimant, including a letter from a life insurer denying coverage due to claimant's diabetes, heart disease, elevated liver enzymes, and hyperlipidemia (AR 48-49, 514).  Finally, when claimant stated that he had spent several days at Fresno Community Hospital - although admitting the possibility of  confusion with Madera Community Hospital - the ALJ made a note of the records in order to attempt to obtain them, while also strongly encouraging claimant to make his own effort to obtain and submit the records (assuming they existed).  (AR 60-63.)  With this encouragement, claimant in fact promised to get the records himself (AR 62) while further testifying that he was unaware of any other medical records not already in the file.  (AR 63.)  The remainder of the hearing consisted of extensive questioning by the ALJ, who appeared to give claimant an opportunity to bring forth and put into the record every symptom, impairment and medical issue of which he was aware.  (See AR 65-96.)

In sum, given claimant's awareness of his entitlement to counsel, the ALJ's offer to continue the hearing so that claimant could obtain counsel, and the ALJ's conduct of the hearing itself, the Court finds that claimant was not denied due process.

**2.  Step Three - Medical Improvement**

Claimant next asserts that the ALJ erred by not properly comparing claimant's current condition and pain complaints to those when he was first awarded benefits.  (Doc. 13 at pp. 3-5).  In other words, claimant asserts error in Step Three of the termination of benefits analysis, which assesses whether there has been medical improvement.  A "medical improvement" is "any decrease in the severity of the claimant's impairment based upon positive changes in symptoms."  Carlson v. Shalala, 841 F. Supp. 1031, 1037 (D. Nev. 1993); 20 C.F.R. § 404.1594(b)(1).  A determination of a decrease in medical severity must be supported by a comparison of prior and current medical evidence showing improvement in the symptoms or findings associated with the impairment.  20 C.F.R. § 404.1594(c)(1).

Here, consistent with the regulatory scheme, the ALJ dutifully compared claimant's impairments at the time he was awarded benefits - the "comparison point date" or "CPD" - against

his current condition. (AR 521-22.) In doing so, the ALJ explicitly described claimant's earlier

treating evidence (showing a work-related injury with strained back and precipitated or aggravated

bilateral inguinal hernias) as well as laboratory results pertaining to same (e.g., x-rays and an

electromyogram). (AR 521.) Intervening conditions relating to claimant's angina and mitral valve

prolapse also were noted. (AR 521.) Finally, these were compared to claimant's current condition,

as reported by a consultative orthopedic examiner (Dr. Smith), a consultative psychiatric examiner

(Dr. Bonilla) and during claimant's own testimony. (AR 521-23.) Upon comparing and contrasting

all of information in the record, the ALJ explicitly noted the improvements in symptoms that he had

found:

> "In comparing subsequent to earlier medical evidence, the Administrative Law Judge notes that at the CPD the claimant had difficulty walking or standing, used a cane, and had acute pain complaints. This contrasts to the March 2001 consultative orthopedic examination, which shows that the claimant is able to walk and stand without difficulties, has slight limitation in the range of motion of his back, and does not use, or need, a cane to ambulate. At the CPD the claimant had impairments of lumbar strain, left hip bursitis, and status post-bilateral inguinal hernia surgery. The claimant now is status post-cervical and post-lumbar surgeries, and, based on the consultative examination, does not appear to have residual radiculopathy in his arms or legs, abdominal pain, or residuals from his hernia surgery. . . . At his disability hearing, claimant testified that he had not worn his back brace for a year . . . . He no longer has serious pain complaints . . . . These factors suggest that the claimant has experienced medical improvement." (AR 522-23.)

Accordingly, the Court concludes that the ALJ properly conducted his "medical

improvement" analysis and reached a determination supported by substantial evidence. See, Jones,

760 F.2d at 995 (court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence).

**3. Review of Medical Evidence**

Claimant next argues that the ALJ erred by not fully or fairly reviewing the medical evidence

of record. (Doc. 13 at p. 5). Apart from this general allegation, the only specific issue raised by

claimant is the ALJ's reliance on the consultative examination of Troy Smith, M.D., an orthopedic

surgeon. (Doc. 13 at p. 5)(citing AR 495-99.) Claimant asserts that "[j]ust because a doctor issues

an opinion, after one visit, the cessation requirements are not met. His findings must be compared to

the prior findings to determine if there, in fact, has been medical improvement." (Doc. 13 at p.5.)

///

1    However, as discussed above, the required comparison between claimant's impairments at

2   the CPD and his impairments at the disability review date was in fact made.  (See AR 522-23.)  It

3   bears noting that, in doing so, the ALJ compared the Dr. Smith's consultative examination against

4   other medical evidence and rejected those conclusions he found unwarranted.  (See AR 522)

5   ("Substantial weight is given to the findings of this orthopedic examination; however, the examiner's

6   conclusion that the claimant could lift 25-50 pounds is disregarded, because it does not consider the

7   additional effects of the claimant's angina on his ability to lift and carry weight").  The ALJ did not

8   err.

9   **4. Step Eight - Vocational Expert Testimony**

10    Claimant contends that the ALJ should have elicited vocational expert testimony at the

11  administrative hearing because there were nonexertional and mental limitations present.  (Doc. 13 at

12  p. 5).

13    This assertion by claimant bears on Step Eight of the disability termination analysis.  In that

14  step, reached only after a determination that a claimant cannot return to his past work, the ALJ

15  determines whether, given claimant's age, education, past work experience and residual functional

16  capacity, claimant can perform "other work."  20 C.F.R. §§ 404.1594(f)(8)(DIB),

17  416.994(b)(5)(vii)(SSI).  Here, in making that assessment, the ALJ applied the Medical-Vocational

18  Guidelines ("the Grids") as referenced and set forth in 20 CFR §§ 404.1569 and Subpt. P App. 2.

19  Upon doing so, the ALJ found that claimant was not "disabled" given that his impairments did not

20  affect his ability to perform a "significant range of unskilled light and sedentary work."  (AR 524.)

21    Claimant is correct that application of the Grids alone is insufficient when nonexertional

22  limitations exist, but they must be "significant."   Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir.

23  1999)(before setting the Grids aside, "[t]he ALJ should first determine if a claimant's non-exertional

24  limitations significantly limit the range of work permitted by his exertional limitations"); Desrosiers

25  v. Secretary of Health and Human Services, 846 F.2d at 577 ("the fact that a non-exertional

26  limitation is alleged does not automatically preclude application of the grids" since only "significant

27  non-exertional impairments . . . may make reliance on the grids inappropriate").

28  ///

1   In his evaluation of the evidence and his determination in this case, the ALJ explicitly
2   addressed the severity of claimant's non-exertional and psychological impairments.  (AR 523.)
3   Among other things, the ALJ noted factors (including claimant's testimony) which indicated that
4   claimant no longer had serious pain complaints and further that any subjective complaints to the
5   contrary were not supported by the medical evidence and therefore not entirely credible.  (Id.)  As to
6   claimant's psychiatric condition, the ALJ credited a consultative psychiatric examination which
7   affirmed claimant's ability to understand, remember and carry out basic instructions, which noted
8   that claimant was taking no psychotherapeutic medications and which suggested no pain or anxiety-
9   related limitation on claimant's ability to withstand stress.  (Id.)

10   In light of the medical and testimonial evidence considered by the ALJ, and his failure to note
11   any significant non-exertional limitations, this Court concludes that the ALJ's application of the
12   Grids was proper.

13   **5.  Mental Health Record**

14   Claimant lastly asserts that the ALJ did not adequately develop the record vis-a-vis mental
15   health reports that were before him.  (Doc. 13 at pp. 5-6).  See Brown v. Heckler, 713 F.2d 441, 443
16   (9th Cir. 1983)("In Social Security cases the ALJ has a special duty to fully and fairly develop the
17   record").

18   The Court notes, however, that the only mental health reports cited by claimant were those
19   prepared *after* the administrative hearing.  (Doc. 13 at p. 6)(*citing* AR 638-687).  These reports *were*
20   addressed by a different ALJ when claimant submitted a new, separate and distinct, disability claim,
21   as referenced in footnote 1, supra.  (See AR 13)(review of psychiatric evaluation by ALJ in
22   claimant's new, separate and distinct, disability claim).

23   Claimant has not moved or otherwise sought to assert "good cause" under sentence six of
24   42 U.S.C. § 405(g) to include "material" "new evidence" in the record.  To the contrary, and
25   according to claimant's own brief, "the evidence subsequent to the ALJ decision [] is not material to
26   the issue of disability before the Court now."  (Doc. 13 at p. 3.)  As to those mental health reports
27   that *were* before him, the ALJ *did* fully consider and comment on each of them, including reports
28   prepared both at the time of claimant's approximate CPD and at the time of his subsequent review.

1  (AR 521-22.)  Accordingly, the Court finds that the ALJ fully and fairly developed the

2  administrative record.

3  **<u>CONCLUSION</u>**

4  For the reasons outlined above, the undersigned finds no error in the ALJ's analysis.  The

5  Commissioner's decision to terminate claimant's disability benefits is supported by substantial

6  evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

7  DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

8  The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of

9  defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Jesus M.

10  Sosa-Smith.

11

12  IT IS SO ORDERED.

13  Dated:   **March 15, 2006**                                      **/s/ Theresa A. Goldner**
    **j6eb3d**                                                        UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14